IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY LANAGER,                :
                                :
        Petitioner               :
                                :
    v.                           :   CIVIL NO. 3:CV-05-1508
                                :
JAMES T. WYNDER, JR.,            :   (Judge Conaboy)
                                :
        Respondent               :
_____

**MEMORANDUM**

**Background**

Jeffrey Lanager, an inmate at the State Correctional Institution, Dallas, Pennsylvania (SCI-Dallas), filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Named as Respondent is SCI-Dallas Superintendent James T. Wynder, Jr. Service of the petition was previously ordered.

Following a jury trial in the Court of Common Pleas of Centre County, Pennsylvania, Lanager was convicted of possession of a controlled substance; criminal conspiracy to possess a controlled substance; possession with intent to deliver a controlled substance on May 1, 1998 and criminal conspiracy to possess with intent to deliver a controlled substance. On August 14, 2000, Petitioner was sentenced to an aggregate five (5) to ten (10) year term of incarceration.

Petitioner's conviction stemmed from an investigation into the activities of suspected cocaine trafficker Andy Bekes. According to the undisputed record, the investigation included trash pulls, physical surveillance, pen register recording, a wiretap, the use of an informant, Jeffrey Flood, and a search of Bekes' motor vehicle wherein twelve (12) ounces of cocaine were seized. During April-May, 1998, Bekes placed numerous phone calls to Lanager. Bekes also visited Lanager's residence on April 15, 1998. Surveillance additionally established that the Petitioner visited the Bekes' residence on April 17, 1998.

On April 30, 1998, Bekes was followed on a trip to Wilkes-Barre, Pennsylvania where he met with an individual, Tricarico, who is described as being a source of cocaine for Bekes. Tricario was observed placing something in the trunk of Bekes' car. Bekes then drove home.

The next day, May 1, 1998, Lanager briefly visited Bekes' residence. A trash pull conducted by law enforcement officials later that day recovered 17 plastic bags with cocaine residue from Bekes' residence. Following a second trip by Bekes to see Tricarico in Wilkes-Barre, police stopped Bekes' car during his return trip, conducted a search, and recovered twelve (12) ounces of cocaine.

Agent Scott Merrill of the Pennsylvania State Attorney

General's Office testified at trial.  Merrill's trial testimony included his interpretation of the content of the electronic surveillance and other cumulative evidence which was introduced against Lanager and Bekes.  Specifically, it was asserted that Lanager would order quantities of cocaine (in amounts which exceeded the norm for personal usage) from Bekes who would then obtain the requested amount from one of his sources, including Tricarico in Wilkes-Barre.  The cocaine would than be conveyed from Bekes to Lanager.

Petitioner's conviction was affirmed following a direct appeal to the Pennsylvania Superior Court.  See Commonwealth v. Lanager, 792 A.2d 615 (Pa. Super. 2001)(Table).  The appeal unsuccessfully argued that the evidence was insufficient to support finding that Petitioner was in possession of cocaine on May 1, 1998, or had an intent to deliver cocaine.  See Doc. 17, Exhibit B, p. 6.[1]  Lanager also claimed that because the Commonwealth's case relied upon the May 20, 1998 seizure of cocaine from Bekes' car; the evidence was insufficient to establish that he was part of a criminal conspiracy to possess with intent to deliver cocaine.  See id.  He additionally raised a claim that Agent Merrill's testimony was not competent.  See

---

[1] Exhibit B is a copy of the Superior Court's November 20, 2001 decision denying Petitioner's direct appeal.

id. at p. 9.  The Pennsylvania Supreme Court denied Lanager's subsequent request for allowance of appeal.  See Commonwealth v. Lanager, 805 A.2d 521 (Pa. 2002)(Table).

Petitioner next initiated an action under Pennsylvania's Post Conviction Relief Act (PCRA).[2]  After appointment of counsel and submission of an amended petition, the trial court denied relief on July 15, 2003.  In an appeal to the Pennsylvania Superior Court, Petitioner raised two (2) arguments.  First, he asserted that counsel provided ineffective assistance by not moving to suppress wiretap evidence obtained from Bekes.  See Doc. 17, Exhibit M, p. 4.  Second, Lanager argued that counsel erred by not objecting to Agent Merrill's opinion testimony.  See id.  The Superior Court affirmed the denial of PCRA relief.  See Commonwealth v. Lanager, 852 A.2d (Pa. Super. 2004)(Table) Thereafter, the Pennsylvania Supreme Court denied Lanager's petition for allowance of appeal.  See Commonwealth v. Lanager, 862 A.2d 1254 (Pa. 2004)(Table).

In his present action, Petitioner seeks federal habeas

---

[2] One of the avenues for relief in the Pennsylvania legal system is collateral relief under the PCRA, "which permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions."  Hankins v. Fulcomer, 941 F.2d 246, 251 (3d Cir. 1991).

corpus relief on the grounds of: (1)"denial of effective assistance of counsel"; and (2) "conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure." Doc. 1, ¶ 12. With respect to his first claim, a supporting Memorandum accompanying the petition argues that trial counsel erred by not filing pre-trial motions in limine or otherwise objecting to the introduction of evidence obtained from trash pulls, pen register recordings, physical surveillance, telephone wiretaps of Andrew Bekes and a search of Bekes' automobile.

Counsel was also purportedly deficient by permitting Agent Merrill to be asked leading questions and offer hearsay testimony. It is also argued that Merrill was improperly allowed to give prejudicial interpretations regarding taped telephonic conversations between Lanager and Bekes. The petition concludes that the telephonic evidence used against him was unconstitutional because the order approving the initiation of an electronic wiretap mentioned only Bekes, thus, since Petitioner was not named in the request for electronic wiretap, his words were improperly seized. See Doc. 1, ¶ 12(B). Petitioner also claims that counsel erred by allowing informant, Jeffrey Flood, to testify as to drug transactions he conducted with Bekes.

5

## Discussion

### Standard of Review

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).[3] See generally, Gattis v. Snyder, 278 F.3d 222, 234 (3d Cir. 2002); Moore v. Morton, 255 F.3d 95, 104-05 (3d Cir. 2001). The Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

---

[3] Specifically, 28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> 
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

independent meaning.  Williams v. Taylor, 529 U.S. 362, 404-405 (2000).  As explicated in Bell, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . .

This deferential standard of review applies to state court decisions on ineffective assistance of counsel claims.  Id. at 694-98.  Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. § 2254(e)(1).

In summary, the appropriate inquiry for federal district courts in reviewing the merits of § 2254 petitions is whether the state court decisions applied a rule different from the governing law set forth in United States Supreme Court cases, decided the case before them differently than the Supreme Court has done on a set of materially indistinguishable facts, or unreasonably applied Supreme Court governing principles to the facts of the

particular case.  State court factual findings may be set aside only if rebutted by clear and convincing evidence.

**Search and Seizure**

As previously noted, Petitioner seeks habeas corpus relief in part on the contention that improperly obtained evidence was used to convict him.  Specifically, he asserts that evidence obtained from Andrew Bekes via telephone wiretap, trash pulls, pen register recordings, physical surveillance and the search of an automobile belonging to the co-conspirator resulted in his conviction.  The gist of his claim is that he was not the subject of, nor was his name mentioned in the warrants which enabled the seizure of the above described evidence.

It is well settled that "... a state prisoner may not be granted federal habeas corpus relief on the ground that evidence seized in an unconstitutional search or seizure was introduced at his trial," if the state has already provided an "opportunity for full and fair litigation" of his Fourth Amendment claim.  <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976); <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1491 (3d Cir.), <u>cert denied</u>, 512 U.S. 1230 (1994).  <u>Stone</u> precludes a habeas petitioner from raising a Fourth Amendment claim if he has been afforded a full and fair opportunity to litigate that claim in state court.  <u>Gilmore v. Marks</u>, 799 F.2d 51, 54 (3d Cir. 1986), <u>cert. denied</u>, 479 U.S. 1041 (1987).

The record of this action as summarized above clearly demonstrates that Lanager had a full and fair opportunity to litigate his Fourth Amendment claims in state court.  As evidenced in the record, Petitioner pursued a direct appeal as well as a PCRA action.  Accordingly, Lanager is not entitled to federal habeas corpus relief with respect to any claims regarding illegal search and seizure or evidence obtained therefrom.

**Ineffective Assistance**

Petitioner next maintains that both pre-trial counsel and trial counsel erred by not filing motions in limine in order to prevent the introduction of evidence obtained via trash pulls, physical and electronic surveillance, pen register recording and the search of Bekes' car.  Pursuant to the above discussion, under Stone, this Court is precluded from addressing any claims of ineffective assistance of counsel which relate to any assertions of illegal search and seizure.

Lanager also argues that counsel should have sought to prohibit the testimony of Flood on the grounds of relevance because the informant's testimony did not establish that Lanager was buying or selling cocaine.  See Doc. 1, Memorandum, ¶ IV. Petitioner additionally contends that trial counsel was deficient by allowing Agent Merrill to offer interpretations regarding the content of taped phone calls between Petitioner and Bekes and by

9

not objecting when the Commonwealth asked Merrill leading questions.

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test.  First, the petitioner must prove that counsel's performance was deficient.  Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  That is, he must show that counsel's "representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  There exists a "strong presumption" that trial counsel's performance was reasonable and might be considered sound trial strategy.  Jermyn, 266 F.3d at 282 (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

Second, a petitioner must show that he was prejudiced by the deficient performance.  Strickland, 466 U.S. at 687.  The prejudice test is whether there is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have been different.  Id. at 694.  A reasonable probability is one that is "sufficient to undermine confidence in the outcome."  Id. at 694.  "Without proof of both deficient performance and prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a breakdown in

the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell, 535 U.S. at 695 (internal quotations and citation omitted).

In assessing an ineffective assistance claim, the totality of the evidence before the jury must be considered. Jermyn, 266 F.3d at 283. Where there is a reasonable basis for a tactical decision made by defense counsel, a finding of ineffective assistance cannot be reached. Burger v. Kemp, 483 U.S. 776 (1987). "[S]ubstantial deference is to be accorded to counsel's tactical decisions." United States v. Wiener, 127 F. Supp. 2d 645, 648 (M.D. Pa. 2001).

With respect to the testimony of Jeffrey Flood, an informant, the Petitioner was charged in part with being part of a conspiracy to buy and sell cocaine. Flood's testimony regarding drug transactions he conducted with Bekes, Lanager's co-conspirator, was both relevant and properly admitted. Trial counsel cannot be deemed ineffective for not objecting to or otherwise seeking to preclude said testimony.

Agent Merrill testified as an expert in the area of drug identification, drug paraphernalia, business practices of drug organizations, and deciphering the coded language used by drug dealers. Petitioner's trial counsel stipulated to Merrill's expertise and there is no challenge to that decision. During

11

trial, the Commonwealth played recorded telephone conversations between Bekes and Petitioner.  Merrill testified as to the meaning of certain words employed by Bekes and Lanager during those conversations.  The witness explained that certain words were coded language which referred to cocaine, quantities of cocaine, and prices for cocaine.  The trial court concluded that Merrill's expert testimony as to the meaning of coded language used during the taped telephone conversations was permissible.  The Pennsylvania Superior Court agreed, noting that code words employed by Bekes and Lanager were "terms not known to persons not engaged in drug trafficking; the subject matter was the proper subject of expert testimony." Doc. 17, Exhibit M, p. 8.

    The Court of Appeals for the Third Circuit has clearly recognized that the admission of expert testimony should only be reversed for an abuse of discretion.  United States v. Gibbs, 190 F.3d 188, 211 (3d Cir. 1999).  It added that expert testimony could be excluded "when the testimony ventures into areas in which the jury needs no aid or illumination."  Id. at 212.  However, the Court of Appeals added that "experienced government agents may testify as to the meaning of coded drug language." Id. at 211.  Based upon an application of the standards announced in Gibbs, it was clearly within acceptable constitutional parameters for Agent Merrill to provide testimony as to the coded

meaning of language used during the Bekes-Lanager recorded telephone conversations.

The petition next vaguely asserts that trial counsel did not object to a portion of Merrill's testimony which consisted of hearsay statements regarding "the content of conversations he had with others." Doc. 1, Supporting Memorandum p. 6. The Superior Court denied relief on the basis that said testimony was non-prejudicial and cumulative. <u>See</u> Doc. 17, Exhibit M, p. 10. The failure of the Petitioner to clearly identify the purported hearsay, establish that it was in fact inadmissible hearsay testimony, and provide any credible rationale as to how the testimony denied him due process warrants the dismissal of this claim. Lanager is also not entitled to federal habeas corpus relief because he has not established that the use of the alleged hearsay testimony resulted in actual prejudice.

Petitioner's remaining claim is that counsel erred by not objecting when the Commonwealth asked Merrill leading questions. The Superior Court in denying relief characterized this argument as being an "undeveloped claim," noting that the Petitioner had failed to identify the leading questions, how they were answered and why they were prejudicial. <u>See</u> Doc. 17, Exhibit M, p. 10.

Based on a review of the present record, Lanager generally contends only that "the prosecutor used leading questions to

13

elaborate on Merrill's interpretations of the conversations." Doc. 1, Supporting Memorandum, p. 6.  This unsupported assertion does not satisfy Petitioner's burden under <u>Bell</u> of providing proof that the alleged failures of defense counsel rendered the result of his trial to be unreliable.  His vague leading question claim as stated simply cannot support a determination that the fairness of the trial was affected to the degree necessary to constitute a constitutional violation.

## **Conclusion**

Lanager has not demonstrated that the state courts' rejection of his ineffective assistance claims reflected an unreasonable application of established federal law.  Second, his search and seizure related claims are precluded under <u>Stone</u>.

In conclusion, despite having been afforded not only a liberal but a most generous review by this Court, Lanager has not satisfied his burden of establishing any entitlement to federal habeas corpus relief.  Accordingly, his habeas corpus petition will be denied.  An appropriate Order will enter.


<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge


DATED: NOVEMBER 2, 2006

```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                    MIDDLE DISTRICT OF PENNSYLVANIA


JEFFREY LANAGER,                     :
                                     :
        Petitioner                   :
                                     :
    v.                               :  CIVIL NO. 3:CV-05-1508
                                     :
JAMES T. WYNDER, JR.,                :  (Judge Conaboy)
                                     :
        Respondent                   :
```

**ORDER**

AND NOW, THEREFORE, THIS 2nd DAY OF NOVEMBER, 2006, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

1. The petition for writ of habeas corpus is denied.
2. The Clerk of Court is directed to close the case.
3. Based on the Court's determination, there is no basis for the issuance of a certificate of appealability.

```
                         S/Richard P. Conaboy
                         RICHARD P. CONABOY
                         United States District Judge
```

15